IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STACY LaFAY, ) | |
| ) | Case No. CV-05-287-S-BLW |
| Plaintiff, ) | |
| ) | **MEMORANDUM DECISION** |
| v. ) | **AND ORDER** |
| ) | |
| MICRON TECHNOLOGY, INC., ) | |
| a Delaware Corporation, DAVID ) | |
| Korn, and JOHN/JANE DOES I ) | |
| through X ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment (Docket No. 33). The Court heard oral argument on November 2, 2006, and now issues the following decision.

## BACKGROUND

Plaintiff, Stacy LaFay, worked for Defendant, Micron Technology, Inc. ("Micron") for fourteen years from March 1990 to March 2004. In November 2003, LaFay sustained an on-the-job injury from exposure to chemical fumes. (See LaFay Depo. 94:2-5, attached as Ex. C to Olsson Aff.). On December 3, 2003, LaFay was given a work restriction by Micron Health Services requiring that he

**Memorandum Decision and Order -- Page 1**

avoid strong chemicals or potential exposure to strong chemicals.  (See Ex. H to Olsson Aff.).  On December 17, 2003 Micron Health Services recommended that LaFay continue with the earlier work restrictions, and LaFay was given a temporary job assignment outside of the Fab where he could avoid chemical exposure.  (See Ex. l to Olsson Aff.; see also Lafay Depo. 105:3-22, attached as Ex. C to Olsson Aff.).

     Micron's Occupational Health Clinic physician, Dr. Chicoine, thereafter referred LaFay to a pulmonologist, Dr. Crowley.  Dr. Crowley evaluated LaFay on January 21, 2004 and determined that LaFay had signs of reactive airways dysfunction syndrome.  (See Exs. K and L to Olsson Aff.)

     On February 4, 2004, Dr. Crowley signed a progress note stating that it would be in LaFay's best interest to have his job modified to avoid chemical exposures.  However, Dr. Crowley also told LaFay that he may not be able to avoid chemical exposure altogether, but that he believed it could be significantly minimized.  Dr. Crowley testified that he was not recommending that LaFay not return to work.  (See Ex M to Olsson Aff.; see also Crowley depo. 24:23 - 25:11, attached as Ex. O to Olsson Aff.).

     LaFay's temporary job assignment ended on February 17, 2004.  At that point, Micron allowed LaFay to take time off work.  Micron indicated that LaFay

**Memorandum Decision and Order -- Page 2**

was likely eligible for FMLA leave. On February 24, 2004 Micron confirmed that Lafay was eligible for FMLA leave from February 17, 2004 to April 21, 2004. Micron also confirmed that LaFay's earlier absences, due to his injury, were considered FMLA absences. (See Exhibit 4 attached to Sloat Depo., attached as Ex. J to Olsson Aff.).

On February 26, 2004, Dr. Crowley signed a Work Release Form indicating that LaFay could return to work, but with the restriction of limited chemical exposure. By this time, Micron had developed what it considered redundant safety procedures to assure that LaFay would encounter limited chemical exposure when he returned to work. (See Exhibit 8 to Hadyka Depo., attached as Ex. N to Olsson Aff.).

On March 3, 2004 Micron Benefit Coordinator, Scott Sloat, notified Lafay during a telephone conversation that he could return to work. LaFay disagreed that he was medically cleared to return to work. Sloat asked LaFay to provide additional medical information as to why he could not return to work. Sloat did not give Lafay a time-frame for providing the information. (See Sloat Depo. 54: 3-14, attached as Ex. J to Olsson Aff.).

On March 4, 2004, David Korn, Lafay's shift manager, told Lafay to return to work on March 7. LaFay reported to work on March 7 and met with his

**Memorandum Decision and Order -- Page 3**

supervisors. During that meeting, LaFay again stated that he did not believe he had been medically released to return to work. LaFay also attempted to provide medical records to Korn, but Korn refused to look at them. (See Korn Depo. 151: 18-24, attached as Ex. B. to Olsson Aff.). Micron terminated LaFay the next day.

## ANALYSIS

**I.     FMLA CLAIM**

The FMLA allows an employee covered by the FMLA to take up to a total of twelve weeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The parties do not dispute that LaFay was an eligible employee, and that Micron was a covered employer, within the meaning of the FMLA. See 29 U.S.C. § 2611(2)(A) and (4)(A).

There is also no dispute that subsequent to his injury in November 2003, and prior to February 26, 2004, LaFay was eligible for FMLA leave. However, on February 26, 2004, LaFay's treating physician, Dr. Crowley, signed a medical certification and work status report indicating that LaFay could return to work at anytime so long as he was restricted to regions with minimal chemical fume exposures. (See Affidavit of Joseph Crowley, ¶ 5, Docket No. 39).

**Memorandum Decision and Order -- Page 4**

LaFay now contends that Dr. Crowley's certification did not necessarily change his FMLA status because it did not change the status of LaFay's serious medical condition.  However, whether LaFay is entitled to FMLA leave does not depend solely on LaFay's medical condition.  Rather, LaFay's FMLA status depends on whether his serious health condition "makes [him] unable to perform the functions of [his] position. . . ."  29 U.S.C. § 2612(a)(1)(D).

Micron contends that with Dr. Crowley's release, and the steps taken by Micron to minimize LaFay's chemical fume exposure, LaFay was able to perform the functions of his position as of February 26, 2004.  To support its contention, Micron references the deposition testimony of its then-safety engineer/industrial hygienist, who explained that LaFay's chemical fume exposure would be minimized.  Specifically, York testified that Micron created procedures that, in her professional opinion, would minimize exposure to the point that he would be more likely to be overexposed to a chemical at home than while working at Micron. (See York Depo., 67:4-24, 70:10-23, Docket No. 34, Ex. A).  LaFay has not come forward with any evidence disputing Dr. Crowley's statements or contradicting York's testimony.  Thus, based on the undisputed evidence before the Court, LaFay was able to perform the functions of his position as of February 26, 2004.

The Court's analysis does not stop there, however.  LaFay argues that, in

violation of 29 C.F.R. § 825.305, Micron failed to give him fifteen days after it notified him he was able to perform the functions of his position to provide medical certification of his serious health condition which made him unable to perform the essential functions of his position.  In relevant part, 29 C.F.R. § 825.305 states that:

> (a) An employer may require that an employee's leave . . . due to the employee's own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, be supported by a certification issued by the health care provider of the employee. . . .  An employer must give notice of a requirement for medical certification each time a certification is required. . . .  An employer's oral request to an employee to furnish any subsequent medical certification is sufficient.
>
> (b) When the leave is foreseeable and at least 30 days notice has been provided, the employee should provide the medical certification before the leave begins. When this is not possible, the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts.
>
> (c) In most cases, the employer should request that an employee furnish certification from a health care provider at the time the employee gives notice of the need for leave or within two business days thereafter, or, in the case of unforeseen leave, within two business days after the leave commences. The employer may request

**Memorandum Decision and Order -- Page 6**

> certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration.
>
> (d) At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification. The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency.

29 C.F.R. § 825.305.

Based on *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 96 (2002), Micron argues that the regulatory analysis is "immaterial and moot." (See Defendant's Reply Memorandum in Support of Motion for Summary Judgment, p. 7, Docket No. 42). In *Ragsdale*, the Supreme Court addressed a different regulation, 29 C.F.R. § 825.700, and determined that it was invalid. *Ragsdale*, 535 U.S. at 90. The Supreme Court stated that the regulation "effects an impermissible alteration of the statutory framework and cannot be within the Secretary's power to issue regulations 'necessary to carry out' the Act under § 2654." *Ragsdale*, 535 U.S. at 96. The Court reasoned that the categorical penalty outlined in 29 C.F.R. § 825.700 – that if an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement – was contrary to the FMLA's remedial design.

**Memorandum Decision and Order -- Page 7**

The Court viewed the regulation as creating an irrebuttable presumption that the employee's exercise of FMLA rights was impaired in a situation where the employee would have taken more than the allotted twelve weeks of leave even if she had been notified that the leave was designated as FMLA leave. *Id*. at 90. TheCourt therefore concluded that the regulation impermissibly relieves the employee of the burden of proving any real impairment of her rights and resulting prejudice. *Id.*

Micron argues that 29 C.F.R. § 825.305 also alters the FMLA's cause of action in a fundamental way by relieving a plaintiff of his burden of establishing that he was eligible for FMLA leave, but still permitting him to pursue a cause of action for damages under the FMLA. Unlike § 825.700, § 825.305 does not contain a categorical penalty. In fact, it does not appear to contain a penalty at all. For example, § 825.305 does not state that if an employer fails to give an employee fifteen days to provide medical certification, the leave taken does or does not count against an employee's FMLA entitlement. Thus, unlike § 825.700, § 825.305 does not categorically relieve the employee of the burden of proving any real impairment of his rights and resulting prejudice. The Court therefore does not find § 825.305 invalid.

The Court will therefore turn to the question of whether Micron's failure to

**Memorandum Decision and Order -- Page 8**

provide LaFay with 15 days to provide medical verification violated § 825.305. It is worth noting that the FMLA does not require an employee to submit a medical certification in order to be eligible for FMLA, and that whether medical certification is required is in the discretion of the employer; the regulation states that an "employer *may* require that an employee's leave . . . be supported by a certification issued by the health care provider of the employee. 29 C.F.R. § 825.305(a) (emphasis added). However, once the request is made, the employer "must allow at least 15 calendar days after the employer's request" for the employee to comply. 29 C.F.R. § 825.305(b).

Although very few cases have addressed § 825.305, one case, *Cook v. Electrolux Home Products, Inc.*, 2005 WL 3160698 (N.D.Iowa 2005), is somewhat instructive here. In *Cook*, the court found that once the employer had requested medical certification, a general issue of material fact existed as to whether the employer followed through with the regulations. The court stated:

> While Electrolux chose [to require the employee, Cook, to submit medical certification], a material fact question has been generated as to whether Electrolux failed to follow through with the regulations regarding such requests for certification. Specifically, whether Electrolux failed to comply with the regulation that it was required to give Cook fifteen days in which to submit the requested medical certification, see 29 C.F.R. § 825.305(b), and whether Electrolux did not give Cook notice of what it viewed as the deficiencies in the medical certification form submitted by Cook, which is required under

**Memorandum Decision and Order -- Page 9**

> the Department of Labor's regulations.  See 29 C.F.R. § 825.305(d). In addition, the court finds that a genuine issue of material fact has been generated on the question of whether Electrolux gave Cook an opportunity to cure any alleged deficiencies in the medical certification form, again as required under the Department of Labor's regulations. See 29 C.F.R. § 825.305(d). Therefore, this portion of Electrolux's Motion For Summary Judgment is denied.

*Cook*, 2005 WL 3160698, *11 (N.D.Iowa 2005).

In this case, Micron, like Electrolux in the *Cook* case, requested medical certification.  Lafay attempted to provide medical certification to his supervisor approximately three days later, but his supervisor refused to accept it.  (See Korn Depo. 151:18 - 152:23, Ex. B to Olsson Aff., Docket No. 34).  Thus, as was the case in *Cook*, a material fact question has been generated as to whether Micron failed to follow through with the regulations regarding requests for certification.  Accordingly, the Court will deny Micron's motion for summary judgment as it relates to LaFay's claim that Micron violated 29 C.F.R. § 825.305.

## II.   ADA CLAIM

LaFay "stipulate[d] to the dismissal of his claim under the ADA."  (See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, p. 2, Docket No. 41).  Accordingly, the Court will dismiss LaFay's ADA claim.

In their reply brief, Defendants suggest that they should be awarded fees and

**Memorandum Decision and Order -- Page 10**

costs for the expenses they incurred related to discovery and briefing on the ADA claim.  However, Defendants have not made a formal motion and have not adequately explained the amount of fees they should recover.  Accordingly, the Court will reserve ruling on this matter at this time.  The issue is better left for resolution post-trial.

### III.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

For the reasons stated at oral argument, the Court will dismiss LaFay's claim for intentional infliction of emotional distress.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 33) shall be, and the same is hereby, GRANTED in part and DENIED in part.  The motion is granted with respect to LaFay's ADA and intentional infliction of emotional distress claims.  The Motion is denied with respect to LaFay's FMLA claim.

     IT IS FURTHER ORDERED that the Clerk of the Court shall set this case for a status conference for the purpose of setting the case for trial.



DATED: **November 21, 2006**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order -- Page 12**